IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2007

## RANDY BERNARD MITCHELL v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County**
**Nos. C05-285, C05-397, C05-400      Lee Moore, Judge**

_____

**No. W2007-00023-CCA-R3-PC  - Filed December 10, 2007**

_____

The petitioner, Randy Bernard Mitchell, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel was ineffective for failing to adequately investigate his case and for failing to fully explain the ramifications of his guilty plea.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Jason L. Hudson, Dyersburg, Tennessee, for the appellant, Randy Bernard Mitchell.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**FACTS**

On February 24, 2006, the petitioner pled guilty in the Dyer County Circuit Court to five counts of sale of cocaine under .5 grams, a Class C felony.  Pursuant to the terms of his guilty plea agreement, he was sentenced as a Range II offender to concurrent terms of ten years for each conviction, with one calendar year to be served in the county jail before being furloughed to a long-term treatment center, provided that he had not been transferred to the Department of Correction prior to completing his year in the county jail.  At the guilty plea hearing, the prosecutor set out the factual basis for the pleas, describing for the trial court the petitioner's sale of cocaine to undercover drug task force agents on January 20, June 21, June 28, June 29, and July 1, 2005.

On September 5, 2006, the petitioner filed a *pro se* petition for post-conviction relief in which he claimed that he was denied the effective assistance of trial counsel and that his guilty pleas were unknowing and involuntary. After the appointment of post-conviction counsel, he filed an amended petition in which he alleged that counsel was ineffective for, among other things, failing to conduct an adequate investigation and failing to fully explain to him the ramifications of the guilty pleas. Specifically, he alleged that counsel failed to tell him that his admission to drug rehabilitation was contingent upon his still being housed in the county jail at the end of his first year of service of his sentence.

At the evidentiary hearing, the petitioner testified that trial counsel met with him only twice prior to the guilty plea hearing. At neither of those meetings did counsel discuss the facts of his case. During the first visit, trial counsel informed him that the State was offering him ten years at 30%. The petitioner refused that offer, and, approximately a month and a half later, trial counsel returned with the State's second offer of eight years at 30%. He refused that offer as well because it did not include drug rehabilitation. The petitioner explained that he had a serious drug problem and was very desirous of receiving rehabilitation so that he could "get [himself] clean." He said that trial counsel told him he was not eligible for rehabilitation but that he would continue negotiations with the State. After that date, he never saw counsel again until the day of the guilty plea hearing.

The petitioner testified that, to his knowledge, trial counsel never investigated the case. He said he telephoned counsel, asking him to come get a list of potential witnesses that he had prepared, but counsel never did so. His next contact with counsel came through a letter, dated February 14, 2006, that counsel sent him at the county jail regarding a new offer from the State. The petitioner identified the letter, which was admitted as an exhibit, and stated that he had someone at the jail read it to him because he cannot read very well. The letter states in pertinent part:

> I just spoke with [the district attorney and assistant district attorney] concerning a new offer that they are willing to make in regard to the charges against you. [The district attorney] has offered the following:
>
> 1. Ten (10) years at range 2 to serve a flat one (1) year.
>
> 2. After one (1) year, he will agree to furlough you to a long-term rehab of at least one (1) year.
>
> 3. If you successfully complete the rehab, the remainder of your sentence in all probability will be suspended and you will be put on probation.
>
> Please consider this offer, and let me hear from you as soon as possible.

The petitioner testified that the individual at the jail who read him the letter advised him that it was a good deal because it included his requested rehabilitation. He, therefore, called trial counsel

and told him that he would accept the offer. Trial counsel discussed the plea offer with him in the jury room prior to his entry of the pleas but did not answer when he asked whether he would serve his time at the county jail. Trial counsel also never mentioned, either in the letter or in their subsequent conversation, that the petitioner would not be furloughed if he were sent to the Tennessee Department of Correction. The petitioner said that "TDOC" was not circled as his place of confinement when he signed the plea agreement.

The petitioner testified that he would not have pled guilty had he known that he would not be allowed to go to rehabilitation if transferred to the Department of Correction. He said he first heard about that possibility from the trial court at the guilty plea hearing. He stated that because both trial counsel and the prosecutor had warned him that the judge would not accept the plea agreement if he asked any questions, he told the trial court that he understood the conditions attached to his rehabilitation. He reiterated that his main reason for accepting the plea agreement was his desire for drug rehabilitation and that he would never have pled guilty had he known he would not receive rehabilitation. On cross-examination, the petitioner acknowledged that he had been before a trial court on guilty pleas at least five times in the past.

Trial counsel testified that he had been practicing law for thirty-four years and was appointed to represent the petitioner on his drug cases. He said he went over the facts of the cases with the petitioner in detail, furnishing him with copies of all the investigative reports, reviewing with him the videotapes and audiotapes of the drug transactions, and discussing with him the fact that his wife, a codefendant who had pled guilty, was prepared to testify as to his involvement in the drug sales. Trial counsel estimated that he met with the petitioner eight to ten times, including after sending him the February 14, 2006, letter detailing the plea offer. At that meeting, he fully explained to the petitioner that rehabilitation was contingent upon his remaining in the county jail:

> I had a meeting with him after that and explained to him in detail that it was subject to him remaining in the Dyer County Jail. I also went so far as to call Sheriff Holt and ask him what the situation was as far as beds being available in the penitentiary and his comment was we, they're apparently full because they haven't picked up anybody in awhile. And I went over that, I said, you know, I don't know exactly what that means but whether or not you'll be shipped out of here is completely up to the Sheriff. It's beyond me, [the district attorney] and the system.

Trial counsel testified that he also went over the plea agreement with the petitioner on the day the petitioner entered the pleas. He said that he had the district attorney come in the room, and he and the district attorney "both went into detail about the possibility of being shipped out. That was discussed on several occasions. And in my practice I always go over that with my clients." To his recollection, the petitioner never contacted him about any witness list.

On cross-examination, trial counsel testified that the State never offered the petitioner an eight-year sentence. He said that he and the assistant district attorney discussed it, but the petitioner, whose basic concern in plea negotiations was to try to get into drug rehabilitation, wanted drug

rehabilitation included as part of the deal. The petitioner's substantial criminal history, however, made his an unusual case for drug rehabilitation to be offered. Trial counsel testified:

> Matter of fact, it was quite unusual. You know, I was concerned because of his previous background but because we were trying to place both his wife and [him] in the same boat we thought it would be fair to him to at least give him a shot at it if the occasion arose.

Trial counsel testified that he went over the State's Notice of Enhancing Convictions with the petitioner and the fact that he was facing a possible fifteen-year sentence at 60% if convicted at trial. He agreed that the plea bargain the petitioner received was concurrent sentences of ten years as a Range II offender "to serve a year in jail . . . [b]efore he could be furloughed to rehab . . . [a]nd if he went to TDOC he could not be furloughed to rehab." There was "[n]o agreement as to a suspended sentence on the front end," and counsel was "quite sure" that "TDOC" was circled as the place of confinement at the time the petitioner signed the plea agreement. Trial counsel said that the petitioner never indicated to him that he was unable to read.

At the conclusion of the hearing, the post-conviction court issued detailed findings of fact and conclusions of law in which it found, among other things, that trial counsel had fully investigated and prepared for the case and that the petitioner had clearly indicated his understanding that the drug rehabilitation portion of his plea agreement was contingent upon his remaining in the county jail. On November 29, 2006, the post-conviction court entered a written order denying the petition. The petitioner filed an untimely notice of appeal on January 3, 2007, along with a motion requesting this court to accept his late-filed appeal. On January 17, 2007, this court entered an order waiving the timely filing of the notice of appeal.

## ANALYSIS

The petitioner contends on appeal that the post-conviction court erred in finding that he received effective assistance of counsel and that his guilty pleas were knowingly entered. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999). To establish a claim of ineffective assistance of counsel, the petitioner has the

burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee cases). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Before a guilty plea may be accepted, there must be an affirmative showing that the defendant voluntarily and knowingly entered the plea. Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711 (1969); State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). A plea is not voluntary if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is knowing by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. The trial court may look at a number of circumstantial factors in making this determination, including: (1) the defendant's relative

intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty. Id. at 904-05.

Based on our review of the record, we conclude that the record fully supports the post-conviction court's findings that the petitioner received effective assistance of counsel and knowingly and voluntarily entered his guilty pleas. The petitioner claimed that counsel visited him only twice prior to the guilty plea hearing, did not investigate the facts of the cases, and never told him about the contingent nature of his desired drug rehabilitation. Trial counsel's testimony, on the other hand, which was obviously accredited by the post-conviction court, established that he met with the petitioner eight to ten times, reviewed the evidence in the case, and explained in great detail that the petitioner's being sent to a drug rehabilitation center was contingent upon his still being in the county jail at the end of the year, which was a condition beyond his or the State's control. Trial counsel testified that the prosecutor fully explained the situation to the petitioner as well.

The transcript of the guilty plea hearing reveals that the trial court, additionally, fully explained the conditions required for the petitioner to be sent to drug rehabilitation. The petitioner repeatedly assured the court that he understood and accepted the risk that he might be sent to the Department of Correction, where being furloughed to a drug rehabilitation program would no longer be possible:

> THE COURT: Do you understand the contents of this document?
>
> [THE PETITIONER]: Yes, sir.
>
> THE COURT: Let me go over with you now the conditions of rehab.
> As [the prosecutor] told you, once you . . . serve one calendar year of this sentence, we will furlough you to rehab. The first condition is this, number one, you still have to be under the custody and control of the Dyer County Sheriff's Department. Once you come under the custody and control of the Tennessee Department of Corrections [sic] I no longer have the authority to release you to rehab or furlough you. Do you understand that?
>
> [THE PETITIONER]: Yes, sir.
>
> THE COURT: Once you are with TDOC I don't have any authority over you at all. I can't, even if I wanted to do it, I couldn't furlough you at that point.
>
> [THE PETITIONER]: Yes, sir.
>
> THE COURT: If you get sent to TDOC there is nothing I can do for you. You will have to serve your ten year sentence. You understand that?

[THE PETITIONER]: Yes, sir.

THE COURT: You understand now that you can't withdraw your plea if that happens?

[THE PETITIONER]: Yes, sir.

During the lengthy plea colloquy, the petitioner also told the trial court that he had no questions about his plea agreement and was satisfied with the representation of trial counsel. We, therefore, conclude that the post-conviction court did not err in finding that the petitioner received the effective assistance of trial counsel and that his guilty pleas were knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Following our review, we conclude that the petitioner has not met his burden of showing that trial counsel was ineffective in his representation or that his guilty pleas were unknowing or involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE